corrected, and the judgment is accordingly reduced to $8,809.70, and, as thus amended, is reaffirmed; and a rehearing is refused.

(42 South. 943.)

No. 16,062.

RHODES v. COOPER et al.

(Jan. 7, 1907. Rehearing Denied Feb. 4, 1907.)

1. PARTITION — DRAWING OF LOTS — NECESSITY.

The drawing of the lots is an essential formality in a judicial partition in which a minor is interested; and the failure to observe this formality renders the partition merely provisional.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Partition, § 281.]

2. SAME—PROVISIONAL PARTITION.

The effect of a provisional partition is to give to the parties the right to the fruits of the things which have fallen to them respectively.

3. SAME—DEFINITIVE PARTITION—PRESCRIPTION.

Where a partition is thus provisional, because of a minor having been interested and of the forms of law not having been complied with, the action of the minor for a definitive partition is prescribed by either five or ten years from emancipation or majority.

(Syllabus by the Court.)

Appeal from Thirteenth Judicial District Court, Parish of Rapides; Wilbur Fisk Blackman, Judge.

Action by John T. Rhodes against Mary D. Cooper and others. Judgment for defendants, and plaintiff appeals. Affirmed.

R. J. Bowman and William Cullen Roberts, for appellant. Andrews & Hakenyos, for appellees.

PROVOSTY, J. The father of plaintiff died in 1858, leaving plaintiff, then three years old, and another child, as heirs to his half of the community property, consisting of the 40 acres of land with the improvements thereon now in litigation and 31 slaves. The community owed plaintiff's mother, defendant in this suit, $10,000. The other child died in 1860, leaving plaintiff and defendant sole owners of the above-mentioned property. In that same year, 1860, a partition was made between plaintiff and his mother, by which the 31 slaves were given to plaintiff and the land to his mother, and she relinquished her $10,000 debt. It was a judicial partition with due observance of all forms prescribed by law, except as hereinafter stated. The record of this partition having been destroyed in the burning of the courthouse of Rapides parish, where the property is situated, during the War, a suit was instituted in 1878 by the mother against plaintiff for the re-establishment or renewal of it. Plaintiff was then 20 years old, and had been fully emancipated and dispensed from attaining the age of majority five years previously at the age of 18. To that suit plaintiff, then defendant, made no opposition; and thus he tacitly recognized the propriety of re-establishing said record. In said suit the testimony of Judge T. C. Manning, one time Chief Justice of this court, who was the lawyer who had conducted the partition proceedings, was taken. After testifying to the manner in which the partition had been made, he said:

"Dr. Rhodes had built a large and expensive house on this little tract of land. The property belonged to the community of acquets, and therefore his surviving widow owned one-half of it. At the time of the partition she owned more than one-half of it because one of the children had died, and she inherited a part of its share. As an investment the property was unprofitable. The friends and relatives of the minor who composed the family meeting advised, in the partition, the widow should, if possible, become the sole owner of the tract of land and the improvements upon it, while the minor should take its equivalent in value in other property. Old Mr. Talbert urged that the house and land yielded no revenue; that it was a burden and expense to its owner; that the costs of repairs, etc., would be a burden on the minor; and that it was best for him to have other property which would be remunerative, and particularly was this the case as the widow owned already more than one-half of this property. In the partition she acquired the interest of her son John T. Rhodes in that tract of land and the improvements upon it, and he acquired property equal to it in value. I remembered very well the arrangement at the

time was eminently satisfactory to those who had the interest of the minor nearest at heart, and it was cheerfully acceded to by his mother, who throughout the proceedings was actuated by the tenderest and most conscientious regard for her son's interest."

In the instant suit plaintiff sues his mother for a partition; and demands the rents and revenues as from a possessor in bad faith. He contends that he was not represented in the partition proceedings, and therefore is not bound thereby; and, furthermore, that the shares of the co-owners were assigned to them by the family meeting, instead of being drawn by lot, and that this made the proceedings null.

Defendant answered that the proceedings were regular, and pleaded every prescription known to the Code.

Originally the suit contained a further demand for a tutorship account, but on a former appeal the prescription of four years was sustained against that demand. On said appeal the other pleas of prescription were referred to the merits, and the case was remanded for further trial.

The evidence leaves it doubtful whether plaintiff was represented by a special tutor or by his undertutor. Judge Manning says that Josiah Chambers was undertutor and that Silas Talbert represented plaintiff as special tutor. Mrs. Ford, who was present and remembers all the circumstances, says that Lem Pierce was undertutor and represented plaintiff; and she is corroborated by defendant. In this condition of the testimony, after 43 years, with records gone, and judge and notary and lawyer who conducted the pleadings dead, we will give effect to the presumption omnia rite acta, and hold that plaintiff was represented by his undertutor.

The evidence leaves no doubt that the shares were assigned, or attributed, as the French say, and not allotted, and there can also be no doubt that this was a fatal irregularity. Article 1367 provides that "the lots are drawn for by the co-heirs." And, since this is the greatest safeguard the law has thrown around partitions, it cannot be departed from where minors are interested. Carpentier et Du Saint, Vo. "Partage," No. 776. The exception recognized by this court in Succession of Aguillard, 13 La. Ann. 97, but confirms the rule.

We have therefore to deal with the partition as with one in which a minor was interested and the formalities of the law were not complied with. Such a partition, by express codal provision, is provisional only. Articles 1372, 1400.

There having been a provisional partition, we eliminate at once the demand for rents and revenues, since the very object and purpose of a provisional partition is that each co-owner shall for the time being have the separate enjoyment of a definite part of the property. "Une division le jouissance." Zach., cited under article 1295 of Merick's Code. That the same is true of a partition such as we are now dealing with—that is to say, provisional because a minor is interested and the formalities prescribed by law have not been observed—see Carpentier et Du Saint, Vo. "Partage," Nos. 319, 320.

Coming to the demand in partition, we find that the mother of plaintiff made this partition with him in perfect good faith in 1860, 43 years before the institution of this suit. Plaintiff instituted this suit 30 years, less 3 months, after his emancipation. During all that time plaintiff does not pretend not to have been present in the parish and fully acquainted with all the facts and circumstances of the matter. During all that time the mother had every reason to believe herself to be the true and unquestioned owner of the property. If our law sanctioned the present demand, the commentary arising in every right-thinking mind would be that our law ought to be changed. But our law does not sanction the demand. The longest it allows even to minors for claiming relief against

mere lesion is five years (article 1414), and the longest it allows minors for maintaining an action of rescission' or nullity based on informalities is ten years from their majority (Civ. Code, 2221).

The complaint of plaintiff against the partition is that the formalities prescribed by law were not complied with. Such a complaint, if addressed to a public sale, would be prescribed by five years, and this prescription would run during the minority. Article 3543. When addressed to a · partition, it is certainly prescribed by 10 years from majority (article 2221), if not by the shorter prescription of five years (article 3542).

But, says plaintiff, this is not an action in nullity, or rescission, of the partition, but is an action of partition pure and simple, and hence is prescriptible only by 30 years.

We find that by the practically unanimous sentiment of the courts of France, and by an overwhelming preponderance among the law writers, the action of a minor for a new partition in such a case as the present one, where a partition intended to be definitive had turned out to be provisional as a result of the nonobservance of the formalities prescribed by law, is prescribed, not by 30, but by 10, years. Carpentier et Du Saint, Vo. "Partage," Nos. 292, 293, 294, and 323; Bandry-Lancantinerie et Wahl, Des Successions, Vol. 2, Nos. 2,329, 2,335.

As explanatory of the view thus taken, we translate from two authoritative works, as follows:

"If the co-owners, of whom one is a minor, have purposed to make a real or definitive partition—a partition of the ownership—and the tutor has proceeded without the forms prescribed by law, then, it is clear, there is not a provisional partition, but an ordinary partition, only that it is null in so far as concerns the minor. Such a partition comes squarely under article 1125 [Our articles 1782 et seq., 1792 et seq.], which gives to the incapable person the choice to maintain it or to cause it to be annulled, and this for the space of 10 years from his majority. Article 1302."
Marcadé on article 466, C. N.

"When a partition is provisional by reason of the omission of the formalities prescribed by law in the interest of an incapable person (article 840) [corresponding with article 1372], there is no difficulty in holding that the incapable person may demand a definitive partition. But his co-heirs, who possessed the requisite capacity for proceeding to an amicable partition, and who, we will suppose, intended to make a definitive partition, may they likewise do so. Jurisprudence admits the negative, and properly"—citing a very long list of decisions and law writers.

"Article 1125 justifies that solution. It confines to the incapable person the action in nullity provided in his interest; and the matter involved is an action in nullity, since the partition which the parties desired should be definitive is null as such and produces only provisional effects.

"To prevent the application of article 1125, it is argued that article 840 [our article 1372] does not pronounce the nullity of the partition, but contents itself with restricting its effects. The question is not, it is said, to confer upon the person capable of contracting an action in nullity, but to confer upon him an action in partition.

"This, in our opinion, is a mere play upon words. The act in question is null in so far as it purports to be a definitive partition, and, while the law attributes to it certain provisional effects, it is also true that in the interest of the incapable person the law disregards the will of the parties; and the ordinary effect of that kind of a solution is to confer upon the incapable person alone, and not on his co-contractants, an action to substitute a valid act to the one that is invalid.

"When the partition is definitive with respect to the heirs sui juris, it becomes equally definitive with respect to incapable persons, and in consequence a definitive partition can no longer be demanded after 10 years from the cessation of the incapacity. The prescription of 30 years could not be invoked."
Bandry-Lacantinerie et Wahl, Des Successions, vol. 2, Nos. 2,329, 2,335.

Under the Code Napoleon, art. 840, corresponding with our article 1372, the plaintiff in such an action does not have to show lesion. How far the same thing is true under our Code it is not necessary to determine. According to article 1373 the minor "may" institute the action "if he finds himself injured" by the partition. According to article 1400 "the least lesion will suffice." The question is therefore whether "the least lesion" means some lesion.

The plaintiff in this case does not show any lesion. The evidence leaves no room what-

ever to doubt that his interests were carefully looked after; in fact, that the partition was made solely in his interest. The fact that the slaves which fell to him by the partition were liberated shortly after by President Lincoln's Emancipation Proclamation proves nothing. The fairness and equality of the partition is to be judged of, as a matter of course, as of the day it was made, and not in the light of subsequent events. "A minor cannot be relieved on the plea of lesion when it proceeds only from an unforeseen event." Article 2223.

Thirty years, less three months, having elapsed between the emancipation of plaintiff and the bringing of this suit, it is needless to decide whether the proper prescription to apply in this case is that of ten years against the action of minors in rescission or nullity of agreements entered into for them without the observance of the forms of law (article 2221), or that of five years against the rescission of partitions (article 3542). The longer is good, if the shorter is not.

Judgment affirmed.